UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANN CARLETTA,<br><br>      Plaintiff,<br><br>v.<br><br>RTL, INC.; and RTL ADCONNECT, INC.,<br><br>      Defendants. | Civil Action No. 2:20-cv-14304 (KSH) (CLW)<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs, Ann Carletta by way of complaint against Defendants, Bertelsmann, Inc.; and RTL AdConnect, Inc. says:

## PREAMBLE

This first amended complaint is submitted pursuant to the Scheduling Order entered the Honorable Cathy L. Waldor, U.S.M.J. on February 8, 2021 (ECF No. 13) and solely corrects any misspellings of plaintiff's name in the original complaint. Further pursuant to that Scheduling Order, defendants' answer to the complaint filed on November 4, 2020 (ECF No. 4) is deemed to be responsive to this first amended complaint and no further responsive pleading shall be required.

## THE PARTIES

1. Plaintiff, Ann Carletta is an individual residing at 36 Colony Road, Edgewater New Jersey 07020.

2. Defendant, Bertelsmann, Inc. ("Bertelsmann"), is a Delaware corporation having its principle place of business located at 1745 Broadway, New York, New York.

3. Defendant, RTL AdConnect, Inc. ("RTL"), is a Delaware corporation having its principle place of business located at 1745 Broadway, New York, New York. (Bertelsmann and RTL are referred to collectively herein as "Defendants".)

## JURISDICTION AND VENUE

4. This court has jurisdiction over this matter pursuant to R. 4:3-1(a)(5) inasmuch as the plaintiff is a citizen of the State of New Jersey and Defendants purposefully established minimum contacts within this State by, among other things, engaging plaintiff in a contact of employment and entering in, or attempting to enter in, other contracts or business dealings with citizens of this State

5. Venue is appropriate in Bergen County pursuant to R. 4:3-2(a)(3) inasmuch as plaintiff resides in Bergen County.

## FACTS COMMON TO ALL COUNTS

6. Plaintiff was, within the meaning of the laws relevant hereto, an employee of Bertelsmann and RTL.

7. She commenced her employment with Defendants on or about March 8, 2019 as a Senior Director of Media at an initial annual salary of $166,000 plus benefits and potential bonuses.

8. As detailed in the March 4, 2019 letter offering her employment, her salary increased to $175,000 per year on September 1, 2019.

9. At the commencement of her employment, plaintiff reported to Simon Betts, Board Director, UK & North America.

10. At that same time, Douglas Cajas and Alexandre Callay were also Senior Directors of Media.

11. In May of 2019, Alexandre Callay was promoted to Deputy Director of North America to manage the Defendant's New York and Los Angeles offices and became plaintiff's direct supervisor.

12. During a meeting with Boris Becker, Head of Digital Sales, Brie Higgins, Account Manager and plaintiff, Mr Callay offered his impressions of each of his subordinates. Mr. Becker was okay because he was German. Likewise, he offered that Douglas Cajas, Senior Director of Sales was acceptable because he was not from the United States. While Ms. Higgins was a United States citizen, Mr. Callay explained that because of her Italian background, she seemed more European, making her "one of them."

13. Mr. Callay then pointed to plaintiff and said that she "was an American and was going to be a problem" at least in part because Americans run to human resources with all their problems. He continued to espouse his discriminatory views noting that he is French and French people tell it like it is while Americans, like plaintiff, can only say good things and are difficult to deal with because they are dishonest, can only see a glass as half-full while Frenchmen, like him, see a glass as half-empty.

14. Mr. Callay then undertook a scheme to wrongfully discharge plaintiff from her employment for pretextual reasons, placing her on a Performance Improvement Plan ("PIP") on or about July 3, 2019 based entirely on false allegations of unsatisfactory performance.

15. Plaintiff refuted all the claims in an email to Mr. Callay shortly after receiving the PIP.

16. Plaintiff met with Ericka Kirschner, Bertelsmann's, Senior Vice President of Human Resources, on July 25, 2019. During that meeting, plaintiff related Mr. Callay's discriminatory conduct to which Ms. Kirschner responded, "That's not good."

17. Plaintiff followed through with all the procedures required by the PIP.

18. On September 5, 2010 (just days after her $11,000 salary increase went into effect), plaintiff was called to a meeting with Mr. Callay and Ms. Kirschner where she was informed that she was being discharged as a part of a "restructuring" of the company.

19. No other employees of Defendants experienced any change in their employment status as a result of this purported "restructuring."

20. Bertlesman's Code of Conduct notes that "responsible and ethical behavior toward employees, business partners, society and the environment is an integral part of our company's value system." As such, "All Bertelsmann managers are obligated to be familiar with the basic laws, regulations and corporate policies that are relevant to their areas of responsibility." "Managers are responsible for encouraging open dialogue and for supporting their employees and addressing their concerns in a fair and impartial manner." "Intimidation or retaliation against employees who in good faith provide reports of suspected or actual misconduct must not be tolerated." "Every individual is entitled to fair, dignified and respectful treatment."

21. The Code of Conduct explicitly states that:

> All decisions with respect to recruiting, hiring, disciplinary measures and promotion as well as other conditions of employment must be administered free from any illegal discriminatory practices. <u>We do not tolerate discrimination against employees</u> or applicants for employment <u>because of</u> race, <u>national or ethnic origin</u>, gender, pregnancy, marital or parental status, age, disability, religion or belief, sexual orientation or any other characteristic specified under applicable anti-discrimination law or company policy.

(emphasis added)

22. The conduct of defendants and its representatives, including Mr. Callay and Ms. Kirschner violated this Code of Conduct and applicable anti-discrimination laws.

4

## COUNT ONE
**(New Jersey Law Against Discrimination)**

23. Plaintiff repeats each and every allegation of the preceding paragraphs as if more fully set forth herein.

24. Plaintiff was qualified for and, in fact, performing her respective duties competently and without incident.

25. Plaintiff met and/or exceeded Defendants' legitimate expectations of employment.

26. Plaintiff suffered adverse employment actions as a direct result of her national origin.

27. As a direct and proximate result of the above conduct, plaintiff suffered and continues to suffer substantial loss of income; diminishment of career opportunity; loss of self-esteem; disruption of her family and personal life; physical and mental pain; emotional trauma and distress; pain and suffering; and other irreparable harm.

28. The acts and omissions of defendants violated the New Jersey Law Against Discrimination.

WHEREFORE, Plaintiff, Ann Carletta, demands judgment against Defendants, as follows:

A. For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B. For compensatory damages;

C. For punitive damages;

D. For emotional distress damages;

E. For physical manifestations of pain and suffering;

F. For attorneys' fees and costs of this action;

G. For interest at the maximum legal rate on all sums awarded;

H. For such other and further relief as the Court deems just and proper.

## COUNT TWO
### (New York State Civil Rights Law)

29. Plaintiff repeats each and every allegation of the preceding paragraphs as if more fully set forth herein.

30. Plaintiff was qualified for and, in fact, performing her respective duties competently and without incident.

31. Plaintiff met and/or exceeded Defendants' legitimate expectations of employment.

32. Plaintiff suffered adverse employment actions as a direct result of her national origin.

33. As a direct and proximate result of the above conduct, plaintiff suffered and continues to suffer substantial loss of income; diminishment of career opportunity; loss of self-esteem; disruption of her family and personal life; physical and mental pain; emotional trauma and distress; pain and suffering; and other irreparable harm.

34. The acts and omissions of defendants violated the New York State Civil Rights Law.

WHEREFORE, Plaintiff, Ann Carletta, demands judgment against Defendants, as follows:

A. For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B. For compensatory damages;

C. For punitive damages;

D. For emotional distress damages;

E. For physical manifestations of pain and suffering;

F. For attorneys' fees and costs of this action;

G. For interest at the maximum legal rate on all sums awarded;

H. For such other and further relief as the Court deems just and proper.

## COUNT THREE
### (New York City Civil Rights Law)

35. Plaintiff repeats each and every allegation of the preceding paragraphs as if more fully set forth herein.

36. Plaintiff was qualified for and, in fact, performing her respective duties competently and without incident.

37. Plaintiff met and/or exceeded Defendants' legitimate expectations of employment.

38. Plaintiff suffered adverse employment actions as a direct result of her national origin.

39. As a direct and proximate result of the above conduct, plaintiff suffered and continues to suffer substantial loss of income; diminishment of career opportunity; loss of self-esteem; disruption of her family and personal life; physical and mental pain; emotional trauma and distress; pain and suffering; and other irreparable harm.

40. The acts and omissions of defendants violated the New York City Civil Rights Law.

WHEREFORE, Plaintiff, Ann Carletta, demands judgment against Defendants, as follows:

A. For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B. For compensatory damages;

C. For punitive damages;

D. For emotional distress damages;

E. For physical manifestations of pain and suffering;

  F. For attorneys' fees and costs of this action;

  G. For interest at the maximum legal rate on all sums awarded;

  H. For such other and further relief as the Court deems just and proper.

           LAW OFFICES OF RICHARD MALAGIERE, PC
           Attorneys Plaintiff, Ann Carletta

           By: /s/ Leonard E. Seaman
DATED: June 25, 2021      LEONARD E. SEAMAN

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all matters so triable.

           LAW OFFICES OF RICHARD MALAGIERE, PC
           Attorneys Plaintiff, Ann Carletta

           By: /s/ Leonard E. Seaman
DATED: June 25, 2021      LEONARD E. SEAMAN

## DESIGNATION OF TRIAL COUNSEL

Leonard E. Seaman is designated as trial counsel for the plaintiff in the within action.

           LAW OFFICES OF RICHARD MALAGIERE, PC
           Attorneys Plaintiff, Ann Carletta

           By: /s/ Leonard E. Seaman
DATED: June 25, 2021      LEONARD E. SEAMAN

## CERTIFICATION

I certify pursuant to R. 4:5-1 that the matter in controversy is not the subject matter of any other action pending in any Court or of a pending arbitration proceeding. I further certify that no other action or arbitration proceeding is contemplated. I further certify that to the best of my knowledge, information and belief, no other party should be joined in this action. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment. I certify that confidential personal identifiers

have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

|  |  |
|---|---|
| DATED: June 25, 2021 | /s/ Leonard E. Seaman <br> LEONARD E. SEAMAN |